[Fairfield (5th) Circuit Court, September Term, 1901.]

Douglass, Voorhees and Donahue, JJ.

\* MANHATTAN LIFE INS. CO. v. JOSEPH BURKE.

1. PETITION SUFFICIENT AS AGAINST DEMURRER.

A petition in an action by the assignee of a life insurance policy, setting up the contract of insurance, the assignment for a valuable consideration, the assent of the company issuing the policy to the assignment, demand upon and payment by the assignee of the annual premium, and the death of the insured, is sufficient as against a demurrer, no other facts intervening to defeat recovery.

2. AFFIRMATIVE DEFENSE—BURDEN OF PROOF—FRAUD.

A defense in such action that the policy was taken out by the plaintiff in the name of the assignor upon an agreement that the latter should apply therefor and the former pay the premium thereon and that an assignment thereof should be made, etc., and that it was a mere wagering policy, is an affirmative defense, the burden of proving which rests upon the defendant. Therefore, no evidence having been offered in favor of such defense, it will be considered as withdrawn notwithstanding no formal withdrawal appears in the record, especially where such fact is conceded in argument on review and the trial court in its charge substantially so stated.

3. FRAUDULENT COMPROMISE—REFUNDER UNNECESSARY.

Where a party is entitled to a specific sum of money, as for instance the proceeds of a life insurance policy, and is fraudulently induced to compromise or to accept a lesser sum, it is not necessary that he tender or return the amount so received in order to maintain an action to recover under the policy. Insurance Co. v. Hull, 51 O. S., 270, followed.

HEARD ON ERROR.

VOORHEES, J.

Plaintiff's action below was founded upon a contract of insurance issued upon the life of one George Messmore for five thousand dollars. The policy is dated October 25, 1897. This was the date it was issued to Messmore. On November 24, Messmore assigned the policy to the plaintiff, the defendant company assenting to the assignment to the plaintiff, and afterwards demanded and received from the plaintiff the

\* For decision of the court of common pleas, see Burke v. Manhattan Life Ins Co., 12 Dec. 37.

annual premium on the policy, after it had been thus assigned to the plaintiff.

On February 13, 1899, the said George Messmore, the original insured in the policy, died. The petition then sets forth facts constituting a cause of action in favor of the plaintiff, who had held the policy from Messmore by assignment and for a valuable consideration.

In passing upon the petition, briefly, we have no doubt as to its sufficiency against a demurrer, and if the allegations are true the plaintiff would be entitled to recover from this company, no other facts intervening to prevent his recovery, except as stated in the petition.

The company in its answer interposes two defenses.

The first defense is in the nature of an affirmative one and based upon the ground that the plaintiff has no right to recover upon this policy, because the company says it was not issued in the regular way; that the " policy was taken out by the plaintiff in the name of Messmore for his own sole use and benefit, it being understood and agreed between them at the time that said Messmore would apply for said policy in his name, and ostensibly for his benefit; that the plaintiffs would pay the premium on said policy, and that in the event of the death of said Messmore said insurance money, secured by said policy should be received and held by the plaintiff. Plaintiff paid the premium on said policy, and for the purpose of carrying out said scheme, caused said Messmore, simultaneously with the issuing of said policy, to deliver the same and a written assignment thereof to the plaintiff; all of which was done. Plaintiff had no insurable interest in the life of said Messmore, and although the fact was then unknown to the defendant, said policy was a mere wagering policy taken out by the plaintiff on the life of said Messmore." This is the nature of the first defense.

The company interposed a second defense, which is another affirmative one and proceeds upon the ground that the plaintiff having brought his suit upon the policy can not recover, because, after his rights had ripened, there was a compromise entered into whereby the plaintiff by agreement with the defendant received and accepted two thousand dollars in full satisfaction of the policy. This alleged compromise agreement is in writing and a copy of it is embodied in the answer. That is the second defense.

The plaintiff replied denying the allegations of the first defense as well as the allegations of the second defense.

The case then came on for trial and we are to look at the issues that were really tried to the jury and that are now before the court for review.

The first defense that the defendant company interposed being an affirmative one, the burden of proof rested upon the company to make good the claims that were urged there as a defense to the plaintiff's right to recover. While there is no formal paper that we have been able to find withdrawing that first defense from the jury, yet it is conceded in the argument, and it was conceded on the trial and the court in its charge to the jury so stated, that the defendant company offered no proof whatever in support of this first defense. The case went to the jury upon the petition which stated the cause of action was this policy issued to Messmore and assigned by Messmore to the plaintiff, and the second defense interposed by the company, that the plaintiff's cause of action, his rights under that policy of insurance and contract, had been fully settled with the company by the payment of the two thousand dollars.

These were the issues that were submitted to the jury. They were the issues that were tried, and the case went to the jury the same as if the first defense had been out of the way. There was no defense urged upon the court or the consideration of the jury except whether the rights of the plaintiff under this contract were settled by the agreement that was made by the plaintiff with the company.

The plaintiff comes back with a reply and says that this alleged settlement was obtained by fraud. He says the agreement wherein the plaintiff was induced to receive two thousand dollars upon this policy upon his cause of action was obtained from him by fraud, by the fraudulent arts, representations and practices of the defendant. If the signature of the plaintiff to this paper writing, whereby he released the company from all obligation under the policy, was obtained by fraud, it was not a settlement. If this contract was obtained as claimed in the reply then this paper writing would be no defense to the plaintiff's cause of action. Fraud vitiates all transactions. If it was fraudulently obtained, it would stand as if no compromise had been made.

And if this question raised by the reply is out of the way; if the question that the compromise was obtained by the fraudulent arts, representations and practices of the defendant company, how then stands the issue submitted to the jury?

The plaintiff's cause of action is founded upon his contract of insurance. If the plaintiff is entitled to recover (the other question to which I have referred being out of the way), his right to recover is upon his contract; and if he is entitled to recover upon his contract, he is entitled to recover more than two thousand dollars. The contention of the defendant company, and their whole contention, rests upon the question whether or not, when the plaintiff accepted two thousand dollars, he received it in compromise in full of his claim. It contends that if he received that

sum in full of his claim, and now seeks to repudiate the agreement, he must refund and restore the money thus received, before he can have any standing in court. That is the whole vital question in the case.

It is a question of law. There is no trouble about the facts in this case.

There is no question, from the way the issues are presented, that if this alleged compromise were an illegal proceeding, that the plaintiff is not bound to return and restore the money that was received. If that were a condition precedent to bringing this action to recover the balance that not being done, he could not maintain the action. It is not claimed that money received was tendered back or offered to the defendant company.

But was it necessary to tender this money back? That is the real question involved and the only question in the case.

It is claimed the defendant company that the doctrine of the Ohio cases would not apply to this case, because they cannot reach beyond a claim of fraud or duress, wherein it strikes the contract so that it is absolutely void.

We think Insurance Co. v. Hull, 51 Ohio St., 270, [37 N. E. Rep. 1116; 46 Am. St. Rep. 571], does not go to that extent, but that it does recognize the doctrine that where a party is entitled to recover a specific sum of money, as in this case, (there being no defense to this plaintiff's right to recover upon this policy except that there was a compromise and that the plaintiff should refund his two thousand dollars before bringing suit)—the plaintiff, if he is entitled to recover, would have an action for the full face value of the policy. The only reason the defendant company seeks to prevent his recovery is, that he compromised for two thousand dollars. If that agreement fails, by reason of the fraud of the defendant company, by its agents, then his right reverts to his original claim upon his contract of insurance for five thousand dollars, and his right to recover the full amount is restored to him, and he is not bound to restore or return this money that he received from the company. It was owing to him, and he had a right to the entire sum if there was no legal compromise. If that compromise was obtained by fraud, then his right rests upon the contract of insurance according to the face of the policy.

That being the legal question, the vital question in the case, we think it is clearly settled in the case of Insurance Co. v. Hull, *supra.*

In the case before the court, the verdict of the jury was for the balance due after deducting the amount paid under the alleged compromise from the face of the policy, together with interest, and the answers to the interrogatories are in harmony with the general verdict.

It being the view of the court that the law as announced in this case in Insurance Co. v. Hull, *supra*, is applicable to this action, the judgment of the common pleas is affirmed with costs, but without penalty.

Judgment affirmed.

---

## MUNICIPAL CORPORATIONS —WORKHOUSES—NEGLIGENCE.

[Muskingum (5th) Circuit Court, October Term, 1901.]

Norris, Day and Mooney, JJ.

(Of the third circuit, sitting in place of Douglass, Voorhees and Donohue, JJ., o the fifth circuit.)

ROBERT GREEN v. MUSKINGUM CO. (COMRS.) ET AL.

1. GOVERNMENTAL POWERS.

The power conferred on municipalities to preserve the peace and protect persons and property by the arrest of offenders and their commitment and detention in jails or workhouses, is of a public or governmental nature, in which the sovereign state exercises its functions through the aid of a municipality.

2. MUNICIPALITY NOT LIABLE FOR NEGLIGENCE IN WORKHOUSE.

A municipal corporation is not liable in an action for negligence to a person who is injured while operating a defective machine in a workhouse to which he has been sentenced at hard labor upon conviction of an offense against the ordinances of a city, or the statutes of the state. The non-liability of the municipality rests upon the same reason as does that of the sovereign exercising like powers.

HEARD ON ERROR.

McHenry & O'Neal, for plaintiff in error, cited :
Section 2107a to 2107v Rev. Stat.; Toledo v. Cone, 41 O. S. 149; Wood on Master and Servant, 459; Blake v. Ferris, 5 N. Y. 49; Dayton v. Pease, 4 O. S. 80.

C. C. Lemert, for defendants.

## DAY, J.

The plaintiff disclaims any right of action against the county commissioners, who were made parties under the impression that they were liable, and the case, so far as that board is concerned, is dismissed.

The petition avers that, plaintiff is a minor and brings this action by his next friend, who says, in substance, that the city of Zanesville and Muskingum county, jointly, own and conduct a workhouse at Zanesville, where persons convicted of offenses against the ordinances of the city, or the statutes of the state of Ohio, are confined at hard labor, on sentence of a competent court; that, on January 20, 1900, the minor